# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

Newport News and Old Point Railway and Electric
Company v. Clark's Administrator.

March 15, 1906.

Absent, Keith, P.

1. Negligence—*Obstructing City Sidewalk—Results Which Could Not Be
   Foreseen—Case at Bar.*—It is not negligence *per se* for a street rail-
   way company, as a warning to the public, to stretch a rope across
   the sidewalk in plain view, while it is repairing poles which the city
   has required it to place inside the curbing; and if a child nine or
   ten years of age runs against the rope and is violently thrown to
   the sidewalk, sustaining fatal injuries, there can be no recovery
   against the railway company, as the occurrence is one that could
   not have been reasonably expected. The fact that it was customary
   to place a guard also at the point of obstruction to warn persons
   against injuries from falling substances, and that none such was
   placed there in the present instance, would not change the result.

Error to a judgment in favor of the plaintiff in an action of
trespass on the case in the Circuit Court of Elizabeth City
county.  Defendant assigns error.

*Reversed.*

The opinion states the case.

*S. Gordon Cumming,* for the plaintiff in error.

*O. D. Batchelor* and *W. H. Power,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

The circumstances leading up to the accident which terminated in the death of plaintiff in error's intestate are as follows:

In compliance with the requirement of the municipal authorities, the plaintiff in error had removed its poles inside the curb line of the sidewalk along Mallory street, in the town of Phoebus. Subsequently, on the morning of the accident, while the company's linemen were engaged in repairing and stringing wires on the poles, by its order, a rope three-fourths of an inch in diameter was stretched across the sidewalk, one end of which was attached to the blind hinge of a building and the other to one of the company's poles about four feet above the surface of the pavement. The object in erecting this barrier was to warn pedestrians not to pass under the poles on which the men were at work, and thus to protect them from molten lead used in repairing wires, and from tools carried up on the poles by the linemen, which were liable to fall upon and injure persons passing along the sidewalk beneath.

Between 8 and 9 o'clock in the morning, shortly after the rope had been adjusted, plaintiff's intestate, a girl between nine and ten years of age, while running with a companion on her way to school, came in contact with the rope, which passed under her chin, and she was thrown backward upon the pavement, sustaining injuries from which she died two days after the accident.

The jury found a verdict for the plaintiff, upon which the judgment under review was rendered.

From this outline of the salient facts of the case it is obvious that the plaintiff has failed to establish actionable negligence on the part of the defendant. Though it involved a temporary obstruction of the sidewalk at the time of the accident, the company was engaged in lawful business; indeed, it was dis-

charging a duty imposed upon it by the town authorities. The work was attended with some danger to those who might pass along and use the sidewalk at that point, and the law devolved upon the company the duty of exercising ordinary care for their protection. Elliott on Roads and Streets (2d ed.), sec. 717; Modern Law of Mun. Corp. (Smith), sec. 1310g; *Nolan* v. *King*, 97 N. Y. 565, 49 Am. Rep. 561.

The instrumentality (a three-quarter rope) employed for the purpose of warning the public, was not *per se* a dangerous appliance. It was manifest to the ordinary observer, and in the light of experience, the accident which befell the child could not reasonably have been anticipated. The uncontradicted evidence and collective experience of all the witnesses who testified on the subject is that they had never known or heard of such an accident before.

In the case of *Sjogren* v. *Hall*, 53 Mich. 274, 278, 18 N. W. 812, Judge Cooley observes: "The fact that it (the accident) was avoidable does not prove that there was fault in not anticipating and providing against it. If a farm laborer falls from the hay mow, the fall does not demonstrate that the farmer was culpable for not railing the mow in. A man stumbling in a blacksmith shop might have his hand or even his head thrown under the trip-hammer, but it would not follow that there had been any neglect of duty on the part of the blacksmith in leaving the hammer exposed. So far as there is a duty resting upon the proprietor in any of these cases, it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injury impossible. . . . . If the fact that prevention was possible is to render the employer liable, then he may as well be made an insurer of the safety of those in his service in express terms, for to all intents and purposes he would in law be insurer, whether nominally so or not."

It plainly appears that the instruction of the court and verdict of the jury were founded upon a misapprehension of the evidence of a single expert witness, who testified that, in addition to stretching a rope across the sidewalk, it was customary to station a guard there also to warn the public. But the warning contemplated by the witness was manifestly against the danger of walking under the poles where the men were at work and being struck and injured by falling substances, and not the remote contingency of injury from contact with a rope plainly visible to any one using ordinary care for his own safety.

In view of the lack of evidence to sustain the verdict in any aspect of the case, it is not deemed necessary to notice the remaining assignments of error.

The judgment must be reversed, and the case remanded for a new trial.

*Reversed.*