TONY PETRICH v. VILLAGE OF CHISHOLM.[1]

May 23, 1930.

No. 27,868.

*Frank M. Talus,* for appellant.
*Gannon & Strizich,* for respondent.

HOLT, J.

The village of Chisholm appeals from a judgment awarding plaintiff damages on account of injuries to person and property when colliding with one of the chains which the village, by ordinance,

[1]Reported in 231 N. W. 14.

permitted the independent school district to bar vehicular travel upon that portion of Third avenue which separates the playground block from the block occupied by the high school and grade school buildings and that part of Hemlock street which separates the latter buildings from the junior high school buildings and ground. Second avenue is the easterly boundary line of the school property, and the chain with which plaintiff came in contact was stretched between posts a foot or so west of the westerly curb of Second avenue, one post being on the north boulevard of Hemlock street and the other on the south. The chain was of three-eighths inch iron links and hung about four feet from the ground. Attached to it over the center of the street was a board about four feet long and five inches wide, painted yellow and having black letters stating "Closed from 8 A. M. to 5 P. M." Another similar chain was across Hemlock street immediately west of Third avenue, and one across Third avenue about a foot south of the south curb of Spruce street, the northerly boundary of the playground block and the high and grade school grounds. An ordinance of Chisholm adopted in 1923 gave the school district permission to bar by ropes or other barriers the streets mentioned, at the points designated, from eight a. m. to five p. m. on school days. Some 2,000 children attend the schools. There is no barrier to the sidewalks. The trial court excluded the ordinance and charged the jury that the village "was guilty of negligence in permitting this chain, with its attached sign, to be stretched across a public street."

The ordinance was pleaded as an absolute defense. It is true that the village has charge of the care and control of its streets, but that is for the purpose of keeping them open and fit for travel. The authority to regulate traffic or to exclude vehicles from any public street must come from the legislature. Defendant claims authority for this ordinance in L. 1885, p. 148, c. 145, § 50 (evidently the law under which it is organized) providing that all its "ordinances, rules and by-laws are hereby declared to have the force of law; Provided, They are not repugnant to the constitution and laws of the United States and the state of Minnesota." We do not under-

stand this section to confer general legislative power upon villages, but rather to grant power to enforce by penalties the ordinances, rules and by-laws enacted concerning those matters which by § 21 of that chapter have been expressly intrusted to the legislative power of the village council. We find no provision giving the village council authority to enact ordinances for the "general welfare" or the safety of its inhabitants so as thereunder to justify the ordinance in question. The suggestion of defendant that authority can be found in L. 1927, p. 563, c. 412, § 32, must be rejected, for the ordinance came into being four years prior to that law. On the authorities and arguments presented we are not prepared to say that the court erred in excluding the ordinance, for we doubt that the implied police power of the village is adequate authority for the ordinance in question, even though it strongly tends in that direction. State v. Sugarman, 126 Minn. 477, 148 N. W. 466, 52 L.R.A.(N.S.) 999. It is not necessary to go further now, for we think the judgment must be reversed for the error in the charge that actionable negligence arose as a matter of law from permitting the school district to stretch a chain across the street.

It does not follow that because neither express nor implied power is found for the enactment of the ordinance the village council's consent to the school district closing those parts of the streets passing through the school grounds during the hours when many pupils are about is actionable negligence as a matter of law. Of course travel over a street may be stopped or diverted temporarily for good reasons rendering travel thereon a hazard, or when necessary to making repairs, notwithstanding the duty of the village to keep its streets open for travel. Since the advent of the automobile the need of stringent control and regulation of vehicular traffic in order to protect life and limb of persons on the streets of a municipality has become exceedingly urgent. Especially is this true in the vicinity of schools. With or without legal authority precautions are taken to protect school children by posting police officers where streets pass schools, by requiring vehicles to come to a full stop at the crossings where the children enter or leave the

school grounds, or by stop and go signals. Here some 2,000 pupils attend the school buildings on two adjacent blocks with a playground on the third block, and the authorities seek to bar vehicles, while these children are about, from only those parts of the streets intervening or separating the school grounds. The exclusion of vehicles during the hours attempted is so obviously dictated by what due care demands to protect the children attending the schools that those responsible therefor should not be held guilty of negligence unless the means adopted to divert the vehicles are such as the ordinarily prudent person would not use. The parts of the streets closed were not contiguous to any other property than that of the school district. No vehicle needed detour more than a block because of this temporary bar. Had the village police been posted to exclude the traffic where the chains so did, it would not seem possible that a person so excluded could maintain any action for violated right. We are of opinion that the issue whether the village was negligent in suffering the school district to use the chain and sign as it was used when plaintiff collided therewith should have been submitted to the jury and that the court erred in taking that issue from them.

Plaintiff claims that no error can be raised on the charge on an appeal from the judgment, and cites Hawley v. Town of Stuntz, 178 Minn. 411, 227 N. W. 358, but overlooks the fact that in that case the motion for a new trial did not properly challenge any definite part of the charge. In the instant case the above quoted part was specifically set out as ground for a new trial. Krause v. C. M. & St. P. Ry. Co. 162 Minn. 102, 202 N. W. 345, also relied on, was an appeal from a judgment where the motion was not for a new trial but merely for judgment notwithstanding the verdict. Of course there no error in the charge could be raised; the question was merely whether the evidence supported the verdict. The charge here attacked took from the jury a vital fact issue and is not a mere failure to instruct upon the bearing of evidentiary matters such as in Cowing v. Cowing, 161 Minn. 533, 201 N. W. 936.

But plaintiff seeks also to justify the ruling that defendant was actionably negligent as a matter of law. The decisions in Larson v.

Ring, 43 Minn. 88, 44 N. W. 1078, and Ihlen v. Village of Edgerton, 140 Minn. 322, 168 N. W. 12, are not in point, for both considered the negligence of defendants in permitting ropes to be stretched across streets jury issues. McDowell v. Village of Preston, 104 Minn. 263, 116 N. W. 470, 471, 18 L.R.A.(N.S.) 190, concerned the erection of a temporary business structure in the street—for purely private purposes—and is not applicable here, for the court said [104 Minn. 265]:

"The record does not present a case of a reasonably necessary and temporary obstruction of a public street which is incident to its improvement or the improvement of an abutting lot."

The court properly submitted proximate cause and contributory negligence to the jury, but for the error in taking the issue of defendant's negligence from the jury the judgment must be reversed.

The judgment is reversed.